All right, our final case this morning is United States v. Cripps, 24-7014. You may please stand. May it please the court, I'm John Grebelius on behalf of Matthew Cripps. Mr. Cripps' sentencing exposure under the guidelines was increased by more than a decade because the district court relied on uncorroborated statements from an unidentified informant, S3, to attribute 54 kilograms of methamphetamine to Mr. Cripps. Yet all other evidence in this case, including Mr. Cripps' statements to police and corroborated statements from S1 and S2, suggest that he only did small-scale one- to two-ounce transactions. And as the lead investigator in the case, Agent Tucker explained, S3's statements about these 54 kilograms were never verified by law enforcement, and that he could only take her word for it that those transactions had occurred. Therefore, attributing these additional 54 kilograms of transactions to Mr. Cripps was clear error, and this Court should reverse. Starting with the law, the law is straightforward. As Ortiz demonstrates, statements from an unidentified informant that the government uses to establish disputed drug amounts and transactions must be corroborated, and that corroborative evidence must specifically address the disputed transactions and amounts. It cannot simply confirm the defendant's past drug-dealing activities. And this requires, of course, more than the statements be reliable or credible. And here, we don't have that corroboration as to the 54 kilograms. And why is that? Well, consistent with Agent Tucker's testimony, there was no seizure tied to these alleged 54 kilograms, these large transactions. And every other source either stated or their evidence suggested that Mr. Cripps only dealt in one-ounce quantities. Further, S3's statements are a clear outlier here. She was talking about roughly 1,900 ounces of methamphetamine, while everyone else was talking about one to two ounces. Only S3 said anything about two-kilogram loads two to three times a week. Now, compare that to S2, who also admitted to distributing on behalf of Mr. Cripps, and he said he did that for four weeks. But he said he only had two loads at one to two ounces during that whole time period. So that's two to four ounces in one month compared to 54 kilograms in little under three. That's a wide discrepancy. Isn't the fact that that was such an extreme amount give some credence to it that S3 was willing to make a statement against interest as to such a large amount? Well, Your Honor, I think to that government's point there that, yeah, I mean, the statement is facially incriminating. But in terms of whether that counts as corroboration, absolutely not. Because the rule says it has to be corroborated by other means or statements or by means other than the statement itself. So would your position be that a statement against interest doesn't matter? I wouldn't say it doesn't matter for just as a general matter, Your Honor. What I'm saying is it can't be alone corroborative. And certainly no case of the government's site supports that. But moreover, her statement, yeah, it's facially incriminating. But we don't have the full details of that statement that she made. She might have been offered immunity. We really don't know. She could have been upset at, you know, the UAB and wanted to just bring them down. I don't know the circumstances. Well, she had a large quantity of drugs, didn't she, S3? She had a little under 8 ounces, I believe, Your Honor. And certainly, I mean, by standards, that's a lot. But that's nowhere near 54 kilograms. And certainly not even near 2 kilograms, which is she's alleging that she's picking up on a... Right, but yeah, she's going back and forth a couple times a week, right? I mean, it's going to add up if she's being truthful. Well, if she's being truthful, you would expect her to be caught with a lot more. That's certainly correct. What she had, less than 8 ounces, if my math is correct. But she is implicating herself in a very large conspiracy. I mean, if, you know, she's responsible for the 54 kilograms also, isn't she, if charged? Well, again, Your Honor, yeah, I agree. It's facially incriminating. And that might be relevant to the question of whether her statements are reliable. But reliability isn't the standard here. They have to be corroborated. And certainly, her own statements can't self-corroborate. And again, we don't know the circumstances of, you know, when she made these statements or, you know, whether she's offered immunity or what have you. So really, all we have is her word. And we have nothing in the record to dispute that Agent Tucker's testimony was that all we have is her word. What if we only had one CI? And on a prior occasion, the CI had ratted out somebody and their information had been perfect as far as to amounts and conduct. And then they did it again. And it was spot on with respect to amounts and conduct. And then on a third time, that's all you have. Is that sufficient? If that person had been sufficiently reliable, over time, would that be enough corroboration? No, Your Honor. And I think that really kind of summarizes the Ortiz case, except with one additional favor in terms of the CI's reliability. But again, reliability isn't the standard. It's whether the actual evidence or the transactions we're disputing had any sort of corroboration. And so, yeah, we can have a reliable informant. Ortiz specifically addresses that. And I don't think anyone in Ortiz disputed that that confidential informant was reliable. The question was whether that informant, their statements about the disputed transactions were independently corroborated. And they weren't. And what was Agent Tucker's testimony regarding S3's reliability or any corroboration? I don't recall him specifically saying anything about her specific reliability. Yeah, again, I just recall him saying that we could take her at her word. And yeah, I don't recall anything specific. Can I also ask you, when we're thinking about corroboration between S1, S2, and S3, it seems like the drugs that were taken from their persons were part of the evidence against but there were some photographs and text messages, I believe, with S1. But what about S2? S2 seemed to be comparable to S3, but you're only challenging the weight that was afforded to the guidelines from S3's statements. Where does S2 fall into this at all? Well, certainly, Your Honor, I'm only challenging S3, but I'm not conceding necessarily that S2 was corroborated. But I'll point out the difference between S2 and S3 is that certainly S2 was caught with methamphetamine that weighed about 1.3 ounces, I believe. But S2 also referred to these 1 to 2 ounce transactions that at least arguably separates him from S3 in that Mr. Cripps himself said he only dealt in 1 to 2 ounce quantities. So there's at least a little bit more overlap there with S2's, you know, statements about these unrecovered  So the corroboration is the defendant's statements? In that sense, that would be the argument. At least that's certainly he's closer to the standard, yes, Your Honor. But again, I'm not necessarily conceding that, but I understand we're not challenging that. How would you distinguish Pacheco? Well, so in that case, we have named witnesses. There were six co-defendants in that case, all named. And when they made their statements to police, a lot of their statements overlapped. There was cohesion among them. You know, they referred to each other's activities. They actually sort of had this intertwining quality to them. Also in Pacheco, there was wiretap evidence, independent wiretap evidence that corroborated the sale of these drugs. And here, we just don't have either one of those. None of these sources say anything that really intertwines or overlaps. And we didn't have any, you know, wiretap evidence or any sort of independent evidence that supports what S3 was saying. You say independent evidence as to the distribution, but not as to the quantity? Which is the argument you're making here. Well, there's independent evidence of distribution. Well, there's evidence of distribution as to S3. She was caught with, you know, drugs. I'm not disputing that. But there's no independent evidence of these additional transactions that she's talking about, where she's traipsing about the state, bringing back, you know, up to six kilograms a week. There's no evidence supporting those transactions. And so, Your Honors, with the – I'd like to reserve the balance of my time, unless you have any other questions. Yeah. Can I ask you about your requested relief here in Montano? And your position, as I understand it, is that we should vacate the sentence and remand, but that should be limited, and that the government should not get another bite at the apple. So how do you apply Montano to this case to get to that result? Certainly, Your Honor. So, first of all, the government bears the burden here. There's no question about that. And defense counsel, for Mr. Cripps, made it clear that we were contesting this informant's information being used. We put the government on notice. It should be no surprise, really, because if you recall from the change of plea hearing, everybody was under the impression that the guidelines range would top out below 10 years. And now, all of a sudden, the PSR comes out, we're looking at 30 to 40 years. So there's no surprise that defense counsel is going to contest this. And knowing all this and having contested that, the government just showed up with what it had, and it didn't try to meet its burden in any other way. And, you know, under Montano and certainly Forsyth, upon which it relies, they shouldn't get a second bite at the apple. If there's nothing further, I'll reserve the balance of my time. Thank you, counsel. May it please the Court, my name is Linda Epperly. I'm an assistant in the United States from Muskogee, and I'm here to represent the government in this appeal. Your Honor, we have three basic things that we think need to be discussed today. First of all, there is evidence in the supplemental record that was produced to the Court just recently, where testimony from or statement from Suspect 2 does lend some corroboration on the Kelo amounts. Second, we did not change the burden of proof here and the trial court acted appropriately. And third, if the court does find error and remand, we do not believe that this is a situation where the government should be limited, if you look at what was really contested below. Let me turn first of all to that supplementary evidence that was recently supplemented to the record here. There is a statement that Suspect 2 gave to the agents there, and toward the end of that statement, on page 14 of that supplemental record, he says, or the statement says, Cripps had mentioned going to Oklahoma City to pick up kilos. A kilo is also known as 2.2 pounds. Redacted, I'm assuming that's Suspect 2, said that he communicates via cell phone with Cripps to facilitate narcotics transactions. Now, I grant you that's not a lot of detail. I grant you he's not just, you know, discussing relations he had with Suspect 3, but that is a mention of Suspect 2 having knowledge that the defendant had been dealing with kilos out of Oklahoma City. And if you recall the timing, Suspect 2 was arrested and shortly thereafter interviewed, I believe, in November. Suspect 3, and at that point, 1 and 2, I'm sorry, Suspect 2 was interviewed in December. Suspect 1 was arrested in November. Suspect 3 doesn't come along until January, and she says in mid-January that she'd been making these deliveries for a couple of months, six to eight weeks, something like that. It's a reasonable interpretation of this evidence that the defendant may have been taking a more active role himself in November and December, and at some point, he enlisted Suspect 3 to go running these errands for him. So is it fair to say that what you've just said is that the corroboration of what Suspect 3 said is an uncorroborated statement by Suspect 2? Yes. Okay. That's fair. Do you have some authority that would say that one uncorroborated statement can support another? Well, I believe that the cases that are cited in the briefs, many of them do rely on suspects, whether they be actually named as co-conspirators or not, corroborating one another. Here, all three of them talk about the distribution of methamphetamine. All three of them talk about, I believe, about doing this on behalf of the United Aryan Brotherhood. All three place the defendant involved in distribution, and we understand that they have an argument that that's not the issue as to the quantity. But one of the objections that was raised in the reply brief, certainly, was that we have addressed our brief toward did the defendant distribute meth, not did he distribute these quantities, and I believe there was some objection that Suspect 1 and 2 were only mentioning these little ounces, and Suspect 3 is the only one who says kilos, and I'm the only one, and I believe that that supplementary exhibit at page 14 indicates that Defendant, I'm sorry, Suspect 2 also mentioned the defendant at that point, personally, I guess, making trips to Oklahoma City to pick up kilos. So there's at least a mention there. Is that supplementary test, was that in the PSR, or was it presented at the hearing? Your Honor, those were... Or is this just a Tucker's interview? Those were, it's an interview, but those were introduced at the sentencing hearing as Exhibits 1, 2, and 3. That is what the probation officer would have looked at in drafting the PSR. Those were introduced at the sentencing hearing so the trial court could consider them, and they were discussed at the sentencing hearing. The second thing that I'd like to touch on, just because I think there was a question about it a moment ago, was exactly what was discussed at the sentencing hearing when the agent answered the question that he was just taking them at their word. It's important to realize below, the objection made by defense counsel was not as nuanced as it is here on appeal. Below, whether it's in objections to the PSR or at the sentencing hearing at pages, well at page 14 to 15 certainly, defense counsel only questioned the fact that the statements were unsworn, unverified, and not necessarily that they weren't specific as to quantity. They were... I'm not sure that's fair. So the pre-sentence report calculates the guideline levels based upon quantity, and so it gives a converted drug weight that they objected to. And then the government, in response to the pre-sentence report objection, said the United States can prove by a preponderance of the evidence that the narcotics cited above, which went to weight, were part of the same course of conduct as the conduct underlying the plea. And what that says to me is the government knows that it has the burden to prove the weight, and you're telling the court, we're going to come to court and prove it. So why does it say, well it wasn't as nuanced, because they didn't develop the arguments as they did in a full appellate brief. Why does that matter when, again, the government was articulating at that time it was on notice that it had the burden of proof as to the weight? The difference, Your Honor, respectfully, is that below the objections were, I want to say, more procedural as far as defense counsel's objections in the objections to the PSR and at the hearing had to do with statements. And in fact, there were only three or four questions. And the defense counsel questioned, now, you mean this was unsworn? You mean that it was unverified? In fact, none of the information was verified. But they objected to the calculation, the guideline calculation, right? Yes. And so that's a procedural mechanism the court must go through to calculate the guidelines. So, I mean, I hear your point about it wasn't as, sort of, further pursued or developed, but I don't understand why that matters in our review because they made the objection, government has the burden of proof. And so what we're looking at is did the district court make factual findings regarding the weight that were, you know, clear error or not, right? Because, I mean, I guess what I'm trying to understand is are you saying that there's some waiver or a forfeiture issue here of the argument that's presented to us because I didn't read that in your response brief? Correct, Your Honor, and I did not argue it in the briefs. Okay, so then why does this matter? This matters only, to me, this matters only if it goes back to the district court. Because based upon the arguments made below, what we would need to do at the district court level is get sworn statements from these people. And that would have been sufficient because that was really the only objection below, the substance of it. But now we know that we need more information about the exact quantity, et cetera. We didn't address that because it was never raised as an issue. We knew we had the burden of proof, but we didn't concentrate on that. The district court did not have the opportunity to concentrate on that, to look at the various cases that we've briefed before this court. And the district court has a right to weigh in on that, I believe, or it would be beneficial to this court and certainly to the case. So we believe that this is not a clear-cut situation where we were put on notice, we failed to meet the burden, we should be limited below. That's the only place it  We would argue that the burden of proof was not shifted. The court simply stated that certain evidence had been submitted that the court found it reliable and basically said there not being any evidence to the contrary. Making that aside does not mean that the court was confused as to who had the burden of proof here. It simply means that the district court had looked at the proof presented, had made the determination at least initially that by preponderance of the evidence it was sufficient, and the court simply saying there's no need for me to weigh any evidence because there is nothing that indicates it's not credible to be weighed. We would urge the court to look at this case, look at Pacheco, and recognize that in that case there were a number of details. There was some electronic evidence, and there's some here, granted not specifically on this issue. There was physical evidence recovered and each suspect implicated themselves in criminal activity. And the court in Pacheco was citing Garcia, which makes the same point that the court was making earlier that this suspect three certainly implicated herself in serious criminal activity. But as to all the overall corroboration for the statement by suspect three, we have again the information from suspect two that also mentioned kilograms. We have details in suspect three's descriptions to the agent that are included in that supplemental evidence at pages, I think, about 17 to 20. She describes several trips. She describes them in detail. She explains what packaging was on the material, and on the occasion when she says she picked up 10 grams and took it to Tulsa, leaving it to come back later and pick it up, it had been repackaged when she came back to get it. Can I ask you about those details? In your brief you mentioned that when S3 was arrested there were a bunch of items that were located in the vehicle, and I believe there were two cell phones. And then in the supplemental it described, or S3 made statements that described the defendant sending addresses to her to make deliveries in Oklahoma City. I read that to mean by send, that was sent by cell phone. Was any of the information from S3's cell phone that seemed to be to be readily available to corroborate her statements, was any of that presented to the district court? Not that I'm aware of. I do not know whether there was an analysis that took place or not, but it was not submitted to the court. The only thing that we can say as to her arrest was she was arrested with quantity of product, both meth and fentanyl. She was arrested with green dot cards, which is important because she explained that that is how she would be paid, and that's how the defendant paid his people oftentimes, was a green dot if he did not pay them in product. She had also tablets, she had a notebook, she had several cell phones, two sets of digital scales. I mean, she clearly is not someone who's just doing a small distribution. She's involved in something more complex than what was discovered with Suspect 1 and 2. But at any rate, we'd urge the court to look at all of the detail that was included in her statement. I think that that lends it more credibility, and the court was entirely reasonable in relying on that to show that there was a sufficient indicia of responsibility to uphold the guideline calculation regarding drug quantity. We'd also note that for what it's worth, the district court did grant a variance in this case and take about 10 years off of his ultimate sentence. And we don't know, you know, obviously that wasn't based on this, but I think it's important to realize that he was not sentenced at the level of that guideline. If there aren't any further questions, we'd ask the court to affirm. Thank you, Counselor. Mr. Gravelius, you had some rebuttal time. Thank you, Your Honors. With respect to the supplemental record, S2 statements don't corroborate S3. As Judge Carson, you pointed out, they're uncorroborated statements themselves. There's also quite a lot of difference there. We don't know when this statement was made. We don't know when these runs happened. We do see that S2 is talking about cell phones, but kind of to shift back to Judge Federico's point, S3 was caught with multiple cell phones, but she didn't even have Mr. Cripps' number. So I don't think there's any sort of overlap or corroboration there. Some of the cases suggest, though, that consistency is one of the elements that we look at for corroboration in S2 and S3's testimony about kilos. There is a consistency there. Why doesn't that help the district court here? Oh, I'm sorry. There is a difference between corroboration and consistency, right? Consistency would be it's not inconsistent. There's no rub or friction there. In Pacheco, I noticed that this court had actually referred to consistent and corroboration as a disjunctive, meaning there's a difference. But consistency would be relevant to reliability, sure. But kilos only means more than one kilo. It can mean one and a half kilos. It can mean two. That's not the same thing as 54. That's a far cry from 54. Now, in terms of S3 providing details, we can't use that to self-corroborate. Her statements are not self-corroborating. Sure, she provided details, but I'm not saying those details were even true. Finally, I think in terms of this claim of nuance and for a remand, I would point out that defense counsel objected to all the attribution from all of these sources. It's not just the 54 kilograms and the amount. It was to all of these transactions. The government was certainly on notice that we would be contesting all of this additional evidence. There was no question that what we were contesting was the transactions and the amount. So they were definitely on notice as to what we were trying to contest, and they had fair chance and they didn't do that. So in conclusion, Your Honors, if the government had more than S3's word, the person in charge of investigating Mr. Cripps would have come up with more than just S3's word. And, of course, more is needed for such a dramatic increase in his sentencing exposure. I think due process certainly would expect no less. And with that, Your Honors, I ask that you reverse. Roberts. Thank you, counsel. Counselor, excuse the case is submitted. And with that, I think we're in recess until tomorrow morning.